UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

NANCY E. APPLETON, TRUSTEE OF THE 4347 VINTAGE OAKS LANE J & N APPLETON TRUST OF 1999,

    Plaintiff,

  v.

COUNTY OF SACRAMENTO, DISTRICT ATTORNEY OF THE COUNTY OF SACRAMENTO, SUPERIOR COURT OF CALIFORNIA IN AND FOR THE COUNTY OF SACRAMENTO, DAVID L. RAY, and DOES 1 through 10,

    Defendants.

CASE NO. CIV. S-05-1685 WBS KJM

MEMORANDUM AND ORDER RE: MOTIONS TO DISMISS

----oo0oo----

    Plaintiff Nancy Appleton's first amended complaint seeks an injunction staying the disbursement of funds resulting from a judicial sale authorized by the Superior Court of California in and for the County of Sacramento. Plaintiff also seeks general damages. Defendants County of Sacramento, the District Attorney of Sacramento County, and court-appointed receiver David L. Ray move to dismiss plaintiff's complaint,

1

1 pursuant to Rule 12(b)(6), for failure to state a claim upon
2 which relief can be granted.
3 I.  Factual and Procedural Background
4          On July 11, 2001, the state court found Alden J.
5 Appleton guilty of fraudulent business practices.  State v.
6 Appleton, No. 99AS00592, slip op. at 2 (Cal. Super. Ct. July 11,
7 2001).  The court ordered civil penalties in the amount of
8 $1,250,000 and the appointment of a receiver to accomplish
9 restitution.  Id. at 10.  On or about August 14, 2001, the court
10 appointed defendant David L. Ray to fill the position of
11 receiver.  (First Am. Compl. ¶ 13.)
12         In February 2004, over objections that plaintiff lodged
13 with the court, Ray obtained an order authorizing the sale of the
14 residence at 4347 Vintage Oaks Lane, Fair Oaks, California ("the
15 property").  (Id. ¶ 15.)  With the help of a real estate agent
16 and leave from the court, Ray completed the sale of the property
17 on or about August 23, 2005 for the purchase price of $860,000.
18 (Id. ¶¶ 16-18.)
19         During the course of these events, plaintiff was not a
20 party to the state court action.  (Compl. ¶ 14.)  She never
21 "intervene[d], move[d] for reconsideration, or appeal[ed] the
22 court's decision[s]."  (Aug. 24, 2005 Order (per Chief Judge
23 Levi) (denying plaintiff's motion for a temporary restraining
24 order ("TRO")).)  However, "on August 19, 2005, plaintiff filed
25 this 42 U.S.C. § 1983 action in federal court."  (Id.)  As the
26 sale was still pending, she immediately filed for a TRO, arguing
27 that "a decision of the state court permitting sale of the
28 residence [would] violate her constitutional rights because she

2

[had] not had a sufficient opportunity to participate in the state court action to defend her property rights." Id.

Plaintiff's motion for a temporary restraining order was "denied principally because it [was] untimely." (Id.) Judge Levi further explained that

> [t]here [was] no reason why this . . . request for stay should not have been filed [earlier]. By waiting to file this action until the state court was prepared to issue a final ruling, plaintiff . . . misused the temporary restraining order. E.D. Cal. L.R. 65-231(b).
> Furthermore, the showing on the merits [was] not persuasive. It [was] unclear whether plaintiff ha[d] any interest in the property. The state court [had] recently found the claim "meritless" in a tentative ruling.

(Id.) Following suit, this court denied plaintiff's second motion for a TRO, which sought to enjoin the disbursement of the proceeds of the sale. Appleton v. County of Sacramento, No. S-05-1685, 2005 WL 2643174, at *1 (E.D. Cal. Oct. 14, 2005).

Presently before the court are defendants' motions to dismiss the first amended complaint for failure to state a claim. Although these motions were filed and briefed separately, the court consolidated the motion submitted by the County of Sacramento and the District Attorney of Sacramento County[1] with defendant Ray's motion to dismiss on November 18, 2005.

---

[1] Defendant Sacramento County, the only defendant in the original complaint, initially moved to dismiss the case on September 2, 2005 and a hearing was scheduled for October 3rd. Because defendants had not yet filed an answer, plaintiff filed in response a first amended complaint as of right, pursuant to Federal Rule of Civil Procedure 15(a). Fed. R. Civ. P. 15(a) ("A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . ."); Shaver v. Operating Eng'rs Local 428 Pension Trust Fund, 332 F.3d 1198, 1201 (9th Cir. 2003) ("[A] motion to dismiss [is] not a responsive pleading within the meaning of Fed. R. Civ. P. 15(a).").

3

II. <u>Discussion</u>

On a motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the pleader. <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974); <u>Cruz v. Beto</u>, 405 U.S. 319 (1972). The court may not dismiss for failure to state a claim unless it appears beyond a doubt that the pleader can prove no set of facts in support of the claim which would entitle him or her to relief. <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984). <u>See also</u> <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957) (complaint need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests").

In general, the court may not consider material other than the facts alleged in the complaint when deciding a motion to dismiss. <u>Anderson v. Angelone</u>, 86 F.3d 932, 934 (9th Cir. 1996) ("A motion to dismiss . . . must be treated as a motion for summary judgment . . . if either party . . . submits materials outside the pleadings in support or opposition to the motion, and if the district court relies on those materials."). However, reliance on matters of public record "does not convert a Rule 12(b)(6) motion to one for summary judgment." <u>Mack v. S. Bay Beer Distribs.</u>, 798 F.2d 1279, 1282 (9th Cir. 1986), <u>abrogated on other grounds by</u> <u>Astoria Fed. Sav. & Loan Ass'n v. Solimino</u>, 501 U.S. 104 (1991). Both plaintiff and defendants have submitted for the court's consideration several orders issued by the state court, including those entering judgment against Mr. Appleton and authorizing the actions of the court-appointed receiver. Because these documents are matters of public record, the court can

4

consider them in deciding the instant motions.  See Kent v. Daimlerchrysler Corp., 200 F. Supp. 2d 1208, 1219 (N.D. Cal. 2002) ("[L]egal decisions by California courts . . . are matters of public record . . . .").

     A.    District Attorney of Sacramento County

"[P]rosecutors, both state and federal, are absolutely immune from section 1983 damage suits challenging conduct 'intimately associated with the judicial phase of the criminal process.'"  Demery v. Kupperman, 735 F.2d 1139, 1143 (9th Cir. 1984) (quoting Imbler, 424 U.S. at 430).  The acts of which plaintiff complains, "authorizing and permitting the sale of the Subject Property," flowed from the claims filed by the attorney and those claims were undeniably "associated with the judicial phase of the criminal process."  (Pl.'s Opp'n to Defs.' Mot. to Dismiss First Am. Compl. at 5.)  Accordingly, plaintiff has not alleged facts that support a cognizable legal theory for the District Attorney's liability for damages.

This leaves the possibility of injunctive relief against the District Attorney.  The Eleventh Amendment does not bar such claims, and a prosecutor's absolute immunity does not protect her from suits for prospective injunctive relief.  Ex Parte Young, 209 U.S. 123 (1908); Roe v. City & County of San Francisco, 109 F.3d 578, 586 (9th Cir. 1997).  The complaint does not state how the District Attorney is still involved in this case or what exactly the court might enjoin her from doing.  However, assuming that there is some action by the District Attorney that the court might enjoin, dismissal of plaintiff's claims for injunctive relief against the District Attorney is

1 nevertheless warranted under the Younger abstention doctrine.
2 See Younger v. Harris, 401 U.S. 37 (1971).

3    Based on comity and federalism interests, Younger
4 abstention "counsel[s] federal courts to abstain from
5 jurisdiction whenever federal claims have been or could be
6 presented in ongoing state judicial proceedings that concern
7 important state interests." Lebbos v. Judges of Superior Court,
8 883 F.2d 810, 813 (9th Cir. 1989) (quoting Haw. Housing Auth. v.
9 Midkiff, 467 U.S. 229, 237 (1984)).  The Ninth Circuit has
10 identified three requirements that must be satisfied before the
11 doctrine can be invoked: "(1) ongoing state judicial proceedings;
12 (2) implication of an important state interest in the
13 proceedings; and (3) an adequate opportunity to raise federal
14 questions in the proceedings." Id. at 814 (quoting World Famous
15 Drinking Emporium, Inc., v. City of Tempe, 820 F.2d 1079, 1082
16 (9th Cir. 1987)).  If these requirements are met, federal court
17 interference is inappropriate unless "bad faith, harassment, or
18 other exceptional circumstances dictate to the contrary."
19 Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S.
20 423, 437 (1982); Drinking Emporium, 820 F.2d at 1082.

21    Plaintiff does not argue that the preliminary
22 requirements of Younger abstention have not been met here.[2]
23 Indeed, the court doubts whether she could credibly make such an

---

[2] Although not a model of clarity, plaintiff's brief does argue that Younger abstention is not warranted because she is "not seeking to stay the State Court Action." (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 4.)  This claim is inconsistent with her request for injunctive relief in this action and ignores the reality that interference with the acts of the receiver, an agent of the state court, constitutes interference in the state court action.

6

1  argument.  State receivership activities are still ongoing, an
2  important state interest in effectuating the consequences of a
3  criminal conviction exist, and plaintiff, who did not intervene,
4  move for reconsideration, or appeal the state court orders, had
5  an adequate opportunity to make her due process claims in state
6  court and simply failed to take action.  See Juidice v. Vail, 430
7  U.S. 327, 337 (1977) (failure to avail oneself of procedural
8  opportunities in state court "does not mean that the state
9  procedures were inadequate"); Baffert v. Cal. Horse Racing Bd.,
10 332 F.3d 613, 619 (9th Cir. 2003) ("Younger abstention applies
11 even if the constitutionality of the pending proceedings is at
12 the heart of Plaintiff's claim.").

13          Plaintiff argues instead that this case falls under
14 either the "bad faith" or "exceptional circumstances" exceptions
15 to the Younger doctrine.  To invoke the bad faith exception,
16 however, "plaintiff must show that the state proceeding was
17 initiated with and is animated by a retaliatory, harassing, or
18 other illegitimate motive."  Diamond "D" Const. Corp. v. McGowan,
19 282 F.3d 191, 199 (2d Cir. 2002).  "A state proceeding that is
20 legitimate in its purposes, but unconstitutional in its
21 execution--even when the violations of constitutional rights are
22 egregious--will not warrant the application of the bad faith
23 exception."  Id.  The situation before the court does not meet
24 this standard.

25          Plaintiff alleges only her conclusion that the state
26 court proceedings were "arbitrary and capricious," (compl. ¶¶ 20-
27 21) which hardly equates to retaliatory, harassing, or otherwise
28 illegitimate.  As discussed below, the state proceedings involved

7

here were legitimate and followed the California state law that authorized them. Thus, even if their execution resulted in, as alleged, a denial of due process, this is not evidence of bad faith. See id. Additionally, allegations of capriciousness are also unextraordinary. Appellate courts daily face challenges to allegedly arbitrary government decisions. The proper remedy in such situations, as here, is an appeal.

Because plaintiff has not raised legally cognizable claims against the District Attorney for damages or injunctive relief, dismissal of the claims against her is warranted.

B.  State Court Receiver David L. Ray

Like the District Attorney, defendant Ray also claims immunity from suit.[3] He bases this argument on the doctrine of "derivative judicial immunity," which is applicable to court-appointed receivers. New Alaska Dev. Corp. v. Guetschow, 869 F.2d 1298, 1302 (9th Cir. 1989); see also Davis v. Bayless, 70 F.3d 367, 373 (5th Cir. 1995) (citing with approval cases in the First, Second, Tenth, and Eleventh Circuits, all of which extended a judge's absolute immunity to court-appointed receivers); Smith v. Martin, 542 F.2d 688, 690-91 (6th Cir. 1976) (same). "[A]bsolute judicial immunity generally immunizes

---

[3] Plaintiff's claims against Ray appear to be in his individual, rather than official, capacity and are thus assumedly for damages. Shoshone-Bannock Tribes v. Fish & Game Comm'n, Idaho, 42 F.3d 1278, 1284 (9th Cir. 1994) ("Where state officials are named in a complaint which seeks damages under 42 U.S.C. § 1983, it is presumed that the officials are being sued in their individual capacities" if "the complaint is silent as to capacity . . . ."). Regardless, Younger abstention, as discussed above, would lead to the dismissal of any claims against Ray for injunctive relief, even if he was not protected from the claims against him by the cloak of judicial immunity.

8

persons . . . who, pursuant to court appointment, administer the affairs of litigants." New Alaska Dev. Corp., 869 F.2d at 1302. Because a receiver "functions as an arm of the court by making decisions . . . the judge otherwise would have to make," he is, like a judge, entitled to immunity when he performs an act that is judicial in nature and he does not act in the clear absence of all jurisdiction. Id. at 1302, 1303 n.6. Additionally, "[m]alice or corrupt motive in the performance of judicial tasks is insufficient to [defeat] absolute immunity." Id. at 1304.

In sum, court-appointed receivers enjoy absolute immunity when they act in accordance with valid orders issued by a judge. Prop. Mgmt. & Invs., Inc. v. Lewis, 752 F.2d 599, 602 (11th Cir. 1985). As evidenced by the state court orders submitted in this case for judicial notice, the receiver's actions complained of here were all authorized by court orders. The state court exercised jurisdiction over the plaintiff and the property at issue, empowered defendant Ray to take the necessary steps to sell the property, and ultimately approved the sale orchestrated by Ray. See State v. Appleton, No. 99AS00592 (Cal. Super. Ct. Oct. 17, 2001) (interim order establishing plaintiff and the property at issue here as "receivership entities" subject to defendant Ray's control); State v. Appleton, No. 99AS00592 (Cal. Super. Ct. Aug. 14, 2001) (appointing defendant Ray as the receiver in the Appleton action); State v. Appleton, No. 99AS00592 (Cal. Super. Ct. Feb. 23, 2005) (authorizing the sale of the property); (Compl. ¶ 18 (sale approved by state court on August 23, 2005)). In addition, the court issued these orders pursuant to powers granted to the state courts by California law.

9

1  See Cal. Code. Civ. Proc. § 564 (authorizing state courts to
2  appoint receivers); Cal. Code. Civ. Proc. § 568 (empowering
3  receivers "to do such acts respecting the property as the Court
4  may authorize"); Cal. Code. Civ. Proc. § 708.205 (allowing state
5  courts to enforce turnover orders against third parties in
6  possession of property subject to a money judgment).

7  Therefore, because defendant Ray acted within the scope
8  of his authority, as provided by valid court orders, he is
9  entitled to derivative judicial immunity based on the facts
10 before the court. Cf. Davis, 70 F.3d at 374 (upholding decision
11 that a receiver who searched and seized the property of a third
12 party pursuant to a Texas state court order was immune from a §
13 1983 suit). Plaintiff claims to be capable of "alleg[ing]
14 additional facts which show that Defendant has committed wrong-
15 doings" and requests leave to file a second amended complaint.
16 (Pl.'s Opp'n to Def. Ray's Mot. to Dismiss at 6.) However, given
17 the state court orders submitted for judicial notice, the court
18 doubts that plaintiff can muster the factual support "to allege
19 that the [receiver's] ultimate actions were not judicial or
20 beyond the scope of the court's jurisdiction . . . ." New Alaska
21 Dev. Corp., 869 F.3d at 1303.

22        C.   County of Sacramento

23             Finally, the County of Sacramento also cannot be held
24 responsible for plaintiff's alleged injuries based on the facts
25 alleged. The County argues persuasively that it is powerless to
26 interfere with the state court's proceedings. In particular,
27 defendant County points out "that papers filed in the name of the
28 People of the State of California were filed by the District

10

1 Attorney for the County of Sacramento and the Attorney General of
2 the State of California.  None of the acts complained of by
3 plaintiff were authorized or performed by Sacramento County."
4 (Defs.' Mot. to Dismiss the First Am. Compl. at 2.)
5            Additionally, none of the actors identified by name in
6 the complaint are subject to defendant County's control.
7 Sacramento County does not control the actions of the Superior
8 Court of California, regardless of the court's physical location.
9 See Cal. Const. art. VI, § 1 ("The judicial power of this State
10 is vested in the Supreme Court, courts of appeal, and superior
11 courts, all of which are courts of record.").[4]  By extension, the
12 receiver appointed by the state court to effectuate its judgment
13 also cannot represent the County or fall under its control.  See
14 also Cal. Code Civ. Proc. § 568 (power of the receiver is "under
15 the control of the Court").  Similarly, a District Attorney, when
16 acting in a prosecutorial capacity on behalf of the state, is not
17 under the County's command.  Weiner v. San Diego County, 210 F.3d
18 1025, 1031 (9th Cir. 2000) (holding that a county cannot be sued

---

[4] This argument was actually made in the County's first motion to dismiss, filed on September 2, 2005 and corrected on September 6, 2005.  Plaintiff filed her first amended complaint in response on September 27th.  Although typically, an amended complaint moots all pending motions, "the [c]ourt may exercise its discretion to consider a motion to dismiss the original complaint where the amended complaint fails to cure the defects of the original complaint."  Fitzgerald v. State, No. Civ. 96-2077, 1997 WL 579193, at *3 (D. Ariz. July 9, 1997); see also Datastorm Techs., Inc. v. Excalibur Commc'ns, Inc., 888 F. Supp. 112, 114 (N.D. Cal. 1995); Roessert v. Health Net, 929 F. Supp. 343, 347 (N.D. Cal. 1996).  Plaintiff's amended complaint, which sought to (1) add new parties over which the County had already argued it had no control, (2) request damages in addition to injunctive relief, and (3) update the facts on which relief is sought, did not cure the defects identified in the County's original motion to dismiss.  The arguments made in that motion are, therefore, still unresolved.

11

under § 1983 for the alleged prosecutorial misconduct of the District Attorney).[5]

In response to these arguments, plaintiff again seeks leave of the court to file a second amended complaint. (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 5-6.)  She makes this request in hopes of establishing a Monell claim against the County, which would allow her to sue a local government entity based on the individual actions of its agents. See Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 694 (1978) (concluding that a local government entity can be held responsible under § 1983 for the individual actions of its agents only when the agent acted pursuant to the government's policy or custom).  The court cannot imagine a set of facts in this case capable of supporting allegations that a local policy, custom, or practice of the County resulted in plaintiff's deprivation of due process when no agent or representative of the County capable of carrying out this policy has been identified.[6]

III. Conclusion

The actions taken by the District Attorney and the court-appointed receiver that form the basis for plaintiff's

---

[5] The Ninth Circuit has held, based on a detailed analysis of state law, that California District Attorneys, despite being named for particular counties, are actually state officers when prosecuting individuals in the name of the people of the state. Weiner, 210 F.3d at 1031.

[6] The court notes that on October 6, 2005, plaintiff filed a document claiming to amend the complaint by substituting actual people for unnamed Doe defendants.  The document identifies these individuals by name only, with no indication as to how they relate to this case.  If plaintiff still wants to bring suit against these individuals, she can file a separate action against them or a proper motion to amend the complaint to join them in this action.

complaint were all intimately associated with the judicial process and did not exceed the state court's authority. These actors are consequently immune from § 1983 liability. Additionally, defendant County had no authority, direct or otherwise, over the state court proceedings that resulted in the sale of the property. The County is therefore also not a proper party to this action.

IT IS THEREFORE ORDERED that the motions of the County of Sacramento, the District Attorney of the County of Sacramento, and David L. Ray to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), be, and the same hereby are, GRANTED.

Plaintiff is given 30 days from the date of this order to file an amended complaint consistent with this order.

DATED: December 23, 2005

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE